[Civ. No. 35366. Second Dist., Div. Two. July 14, 1970.]

MAE FRANCES GREENE, Plaintiff and Appellant, v.
DELORES WILLIAMS, Defendant and Respondent.

**COUNSEL**

English, Jefferson & Callion and Philip Jefferson for Plaintiff and Appellant.

Lewis, Burns & Goldstone and A. A. Goldstone for Defendant and Respondent.

**OPINION**

**FLEMING, J.**—Can a parent annul a minor child's marriage after the child's death because the child married without parental consent?

Mae Frances Greene, mother of Robert, a deceased minor, filed suit against Robert's wife Delores to annul her son's marriage. Her complaint averred that Robert was born 1 May 1949, married Delores without plaintiff's consent on 20 August 1968, and was killed on active military duty 17 November 1968. Delores demurred to the complaint on the ground that the marriage had already been dissolved by Robert's death and plaintiff had no legal standing to bring the action. Her demurrer was sustained without leave to amend, and the complaint was dismissed. Plaintiff appeals.

Plaintiff argues that a nonconsenting parent of a minor child has a property right to annul the child's marriage, that this right survives the death of the child, that therefore her complaint states a good cause of action.

Plaintiff's argument requires some consideration of the general nature of marriage and of annulment. ██ A marriage by an under-age child without parental consent is voidable only and remains in full force until dissolved. (Cf. Civ. Code, §§ 59, 61 (recodified and rewritten as §§ 4400, 4401, incestuous, bigamous, and polygamous marriages are void) with Civ. Code, §§ 82, 85 (recodified and rewritten as §§ 4425, 4453, certain marriages are voidable and may be annulled).) (See *Estate of Karau,* 26 Cal.App.2d 606, 609 [80 P.2d 108].) Dissolution of a voidable marriage for lack of consent is governed by section 82, subdivision One of the Civil Code (recodified and rewritten as § 4425, subd. (a) ), which authorizes annulment of a marriage when "the party *in whose behalf* it is sought to have

the marriage annulled was without the capability of consenting thereto. . . ."(Italics ours.) The procedure is regulated by section 83, subdivision One of the Civil Code (recodified and rewritten as § 4426, subd. (a)), which permits an action for annulment for lack of consent to be brought by "the party . . . who was married under the age of legal consent, . . . or by a parent, guardian, or other person *having charge of* such nonaged [person], at any time before such married minor has arrived at the age of legal consent." (Italics ours.)

What is the effect of the death of a party to the marriage on the right to bring an action to annul the marriage? Behind this question lies the dualism of marriage as both status and contract. Although in modern times the ties of the marriage bond have been considerably loosened, nonetheless status continues to dominate contract within the marriage arrangement. The relative strength of the two elements is seen in Civil Code section 159 (recodified and rewritten as § 4802), which declares that a husband and wife cannot by contract alter their legal relationship except as to property. Since the principal purpose of annulment is to dissolve the legal relationship of the parties to the marriage, it is evident that in annulment, as in marriage, status preponderates over contract.

1. From the point of view of status it is apparent that the marriage here sought to be dissolved by the petition for annulment has already been dissolved by death. (Civ. Code, § 90 (recodified and rewritten as § 4500).) The dissolution is final, irrevocable, nonmodifiable, and nonappealable. Neither the trial court nor this court possesses the power to alter the status of the parties to that marriage by a decree of annulment. Since the entry of such a decree would be an ineffectual act, courts, historically, have refused to entertain actions for annulment by a party to the marriage after the death of the other. As the court said, in *Rawson* v. *Rawson* (1892) 156 Mass. 578 [31 N.E. 653]: "It has always been held in England that petitions for a decree of nullity of a marriage cannot be maintained after the death of one of the parties. . . . The reasons on which such proceedings are ordinarily founded are inapplicable to a case in which one of the parties is dead. While both are living, and the marriage apparently in force, it may be important to have their *status* determined by an adjudication, rather than that they should remain in doubt in regard to the validity of the marriage. But where death terminates the marriage relationship, this reason no longer exists. . . ." This same rule is followed in California. (*Estate of Gregorson,* 160 Cal. 21 [116 P. 60]; *Estate of Karau,* 26 Cal.App.2d 606 [80 P.2d 108].)

2. Plaintiff apparently recognizes that after the death of a party the status of the parties to the marriage cannot be further altered, and on appeal she

has centered her argument on the existence of a property right to annul the marriage, a right which she claims survives the death of the child.

There are two possible sources for such a property right. First, a right in the child itself, which survives the death of the child and passes to the parent. Second, an independent right in the parent, which continues in existence and remains unaffected by the child's death. In considering the first possibility, a property right in the child which passes to the parent, we again examine the general scheme of marriage and annulment. ■ Here we discover that an adult's cause of action for divorce does not survive the death of the other party (*McClenny* v. *Superior Court,* 62 Cal.2d 140, 144 [41 Cal.Rptr. 460, 396 P.2d 916]; *Poon* v. *Poon,* 244 Cal.App.2d 746, 751 [53 Cal.Rptr. 365]), and in the absence of specific legislation the same is true of an adult's cause of action for annulment. ■ It is likewise true that an adult's cause of action for divorce or for annulment does not survive his own death. (*McClenny* v. *Superior Court, supra*; *Estate of Gregorson,* 160 Cal. 21 [116 P. 60]; *Estate of Karau,* 26 Cal.App.2d 606 [80 P.2d 108].) The general rule of survivability of causes of action (Prob. Code, § 573) does not apply to matrimonial causes. (*Poon* v. *Poon, supra*.) We think a minor's right to seek annulment is subject to the same rule. ■ Even if his cause of action is considered a right of property, it is one which terminates with his death. Since the right expires on the death of the minor child, nothing survives to pass to the parent, for a successor right of action cannot be longer-lived than the right from which it derives.

But even though no property right passes from the child to the parent, does the parent nevertheless possess an independent property right of her own to annul the marriage, one not dependent on or related to the continued existence of the child? Here we must analyze the nature of the cause of action the annulment statute gives the parent. ■ It is apparent from the portions of the Civil Code previously quoted that a parent's right to annul the marriage of a minor child is one which the parent exercises in the child's interest in order to protect the child from the long-term consequences of an improvident act. (*Turner* v. *Turner,* 167 Cal.App.2d 636 [334 P.2d 1011].) The statute speaks of an action in the child's behalf brought by a parent, guardian, or other person having charge of the child. Clearly, such an action is wholly derivative and is designed to permit one person to act on behalf of another at a time when the latter is presumed incapable of action prudently on his own behalf. The parent, as representative, is to be guided by the child's welfare and by what appears to be the child's best interest. (Cf. Civ. Code, § 138, subd. (1) (recodified and rewritten as § 4600).) Yet although the voice we hear on the stage is that of the parent, we must not forget that in the drama of under-age marriage the child

remains protagonist and the parent merely declaims a supporting role. Because of the peripheral and secondary nature of the parent's interest in the subject matter, we think it wholly inappropriate to recognize any independent property right in the parent to annul the child's marriage. A single example will illustrate the pitfalls which could accompany such recognition. Suppose after the marriage of a child without parental consent, one parent wishes to annul the marriage and the other does not. If both parents purport to be acting in the interest and for the welfare of the child no insurmountable problem is presented to the court, which can weigh the divergent views of the parents and rule in accordance with what appears to be the best interest of the child. If, however, the court were required to recognize an independent property right in the parent to annul the child's marriage, the problem of conflicting rights would become structurally insoluble, and the child's best interest could well serve as hostage to the property interest of the parent. ▇ For this reason we reject the argument that any separate interest or independent property right lies in plaintiff to annul the marriage of her child, either in her capacity as a nonconsenting parent or as a person interested in the minor's estate. Our conclusion is supported by *Estate of Gregorson,* 160 Cal. 21 [116 P. 60] a case which like the case at bench involved an issue of property. In a contest over letters of administration for the estate of a deceased wife, a contest between the public administrator on behalf of the deceased wife and a guardian on behalf of the surviving husband, the public administrator sought to annul the marriage on the ground of the wife's incompetency at the time of the marriage. The court held that since the marriage had already been dissolved by the death of the wife, the public administrator had no standing to question the validity of the deceased wife's marriage. We think the same rule applies to the nonconsenting parent of a deceased minor child. (See also *Estate of Karau,* 26 Cal.App.2d 606 [80 P.2d 108].)

Cases such as *Turner* v. *Turner,* 167 Cal.App.2d 636 [334 P.2d 1011], relied upon by plaintiff to support the proposition that a nonconsenting parent may annul a minor child's marriage, are not in point, for in those cases the marriages were still extant at the time of suit and had not been dissolved by the death of a party.

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.